Rimkus Consulting Group, Inc.
8100 S. Akron St., Ste 320
Centennial, CO 80112
(720) 488-8710 Telephone
(720) 488-8670 Facsimile

May 22, 2018

Mr. Kurt H. Henkel
Tucker Holmes, PC
7400 East Caley Avenue, Suite 300
Centennial, Colorado 80111

| | | |
|---|---|---|
| Re: | Insured: | Mock et al v. Allstate |
| | Claim No: | 371055146 |
| | RCG File No: | 01606536 |
| | **Subject:** | **Supplemental Report of Findings** |

Dear Mr. Henkel:

Mr. Mark and Mrs. Susan Mock (the Owners) reported on May 25, 2015, the discovery that the ethylene propylene diene monomer (EPDM) roof coverings at the property had standing water. The Owners also reported the discovery of damage to the exterior insulation finish system (EIFS). Their residence was located at 3 Orchard Lane in Littleton, Colorado (the Property).

Rimkus Consulting Group, Inc. (Rimkus) was retained to determine the cause of the damage to the EIFS and to determine the cause of the standing water on the membrane roof coverings. Responsive to that scope, Joseph E. Rottman, of Rimkus, inspected the Property on October 6, 2015 (the Inspection), and Rimkus issued a **Report of Findings** dated October 27, 2015 (**Report of Findings**).

Subsequent to issuance of the **Report of Findings**, Rimkus was asked to review a report prepared by SBSA, Inc. (SBSA), titled Observation Report and dated November 24, 2015 (SBSA Report), and opine on statements made by SBSA in the SBSA Report. This **Supplemental Report of Findings** is responsive to that request and is not intended as a stand-alone report. In the course of this work, Rimkus reviewed the SBSA Report [MOCK_000690 through MOCK_000699], the **Report of Findings**, as well as the documents listed in the Basis of Report of that report. This **Supplemental Report of Findings** was reviewed by Eric M. Riegel, District Manager.

EXHIBIT H

## Conclusions

Conclusions 1 and 2 of the **Report of Findings** remain unchanged and are restated below for clarity:

1. The cause of the damage to the EIFS system was improper design and/or construction exacerbated by inadequate maintenance of sealants. Specifically, the wall system did not provide for drainage of moisture that penetrated the wall through gaps at penetrations. Without diligent and thorough maintenance, moisture likely began penetrating the EIFS system as sealants deteriorated within a few years after construction.

2. The cause of the standing water on the membrane roof system was a combination of improper installation of the membrane and non-continuous roof slopes. Specifically, the slope did not meet the minimum requirements of the applicable building codes; and the membrane had wrinkles that kept drainage from flowing downward toward the through-wall scuppers.

Based on the Rimkus review of the SBSA Report in the time since the **Report of Findings** was issued, Rimkus has added conclusions 3 and 4, responsive to the scope, as follows:

3. SBSA's stated disagreement with Rimkus that the cause of the damage to the EIFS system was improper design and/or construction was misstated by SBSA as an evaluation as to whether the system complied with applicable building codes and standards. Rimkus did not opine on whether or not the EIFS system was compliant with applicable building codes and standards. Rimkus opined that the cause of the damage to the EIFS system was improper design and/or construction.

    a. In regard to the opinion of improper design, Rimkus determined that the manufacturer's design of the system had inherent conditions that were faulty which included:

        1) A lack of means for moisture to escape the wall system once it penetrated behind the EIFS surface barrier system.

        2) A system that had water-resistance integrity that was dependent, in majority part, upon the integrity of sealants at penetrations.

        There was no evidence to indicate that the improper EIFS system design was the result of improper design on the part of the Property's architectural design team.

    b. In regard to the improper construction opinion, the portions of the EIFS system had been removed prior to the Inspection such that not all aspects of the

construction were available to be evaluated by Rimkus. Hence, Rimkus did not rule out construction as causal to the damage.

4. SBSA's support for their disagreement with Rimkus' statement that the maintenance of sealants was causal was their statement of "The homeowners have regularly maintained the sealant joints…"

    a. SBSA did not offer any evidence that that the joints had been maintained continuously throughout the 21-year history of the Property.

    b. SBSA did not offer evidence to support that the "good condition" of the sealants referenced in their report was not the result of repairs made just prior to, or at the time of, the SBSA inspection, and after the damage to the wall system had already occurred.

    c. The basis of Rimkus' statement was the presence of staining and deterioration of the wood framing below the EIFS penetration locations, which indicated water penetration had previously occurred one or more times at those locations.

## Discussion

Generally, statements made in the SBSA Report were in agreement with the findings of the Rimkus report.

Rimkus did not make any statements or offer opinions in its **Report of Findings** to indicate that the EIFS system was not compliant with applicable building codes and standards. The SBSA Report characterized "original construction defects" as a matter of building code and standards compliance. In fact, Rimkus' reference to improper construction was relative to conditions that may have been present in the layout and application of the EIFS system that would have had an adverse impact on the performance of the system. Since the EIFS in the damaged areas at the Property had been removed prior to the Inspection, Rimkus was not able to inspect and evaluate it. As such, Rimkus had no basis to rule out construction as causal to the damage.

Regarding the Rimkus statement that the cause of the damage to the EIFS system was improper design, SBSA suggested that Rimkus was critical of the Property's architectural design team relative to the EIFS system. That was not the case, as Rimkus had no basis with which to draw such a conclusion as Rimkus did not review any drawings, specifications, or other communications issued by the Property's design team that would allow such a critique. SBSA stated "SBSA and Rimkus agree that the water intrusion and resultant damage is the result of an inherent flaw in barrier EIFS systems" [MOCK_000698]. That referenced flaw was a component of the EIFS manufacturer's system design, and as Rimkus agrees, was not attributable to the architectural design team of the Property.

Regarding maintenance of sealants and their part in the damage that was present, Rimkus drew upon the fact that, as a barrier system, EIFS does not allow water to pass through it. The only possible locations for water to pass through the system are at openings such as joints and penetrations for windows, pipes, and vent ducts. The water that managed to get behind the EIFS could only have done so at those locations, which are typically protected by sealants. The water-resistive integrity of those locations are substantially, if not wholly, dependent upon those sealants remaining adhered, flexible, and intact. Sealants are temporary and will age and fail over time. The duration of their functional performance depends upon multiple factors including exposure and thermal expansion and contraction demands. Sealants that are at joints and penetrations of upper levels of a building's exteriors can be difficult to maintain and easy to let go unchecked. It is common and typical for sealants to fail prior to being replaced or repaired. There was no evidence presented to support that the sealants at the Property had been maintained to such a regular degree that there had been no failures. The SBSA Report indicated that SBSA had based their opinion on the Owners having told SBSA that they had maintained the sealants over their entire ownership of the property. Rimkus' opinion was based on typical maintenance practices with regard to sealants, and on the presence of the staining and water damage that was behind the EIFS and below penetration locations at the Property. The presence of the staining and water damage was evidence that the sealants had failed and had not been maintained in a water-tight condition as intended.

This report was prepared for the exclusive use of Tucker Holmes, PC and was not intended for any other purpose. Our report was based on the information available to us at this time. Should additional information become available, we reserve the right to determine the impact, if any, the new information may have on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted.

Thank you for allowing us to provide this service. If you have any questions or need additional assistance, please call.

Sincerely,
RIMKUS CONSULTING GROUP, INC.

Timothy S Nunnery

Digitally signed by: Timothy S Nunnery
DN: CN = Timothy S Nunnery C = US
O = IdenTrust ACES Business
Representative OU = RIMKUS
CONSULTING GROUP INC
Date: 2018.05.22 15:50:26 -07'00'

T. Scott Nunnery, R.A.
Architect License B-3062
Principal Consultant

STATE OF COLORADO
T. SCOTT NUNNERY
B-3062
LICENSED ARCHITECT

Attachments: Photographs, Curriculum Vitae