IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02592-KLM

MARK MOCK, an individual, and
SUSAN MOCK, an individual,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, an Illinois company,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on Defendant's **Motion for Summary Judgment** [#39][1] (the "Motion"). Plaintiffs filed a Response [#45] in opposition to the Motion, and Defendant filed a Reply [#51]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#39] is **GRANTED**.[2]

### I. Factual Background[3]

Plaintiffs purchased homeowners insurance coverage from Defendant for their home in Greenwood Village, Colorado. The applicable insurance policy covers "sudden and

---

[1] "[#39]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. See [#12, #13].

[3] *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant.").

accidental direct physical loss to [the] property." *Ex. A* [#39-1] at 24. It does not cover loss to the property caused by "design," "workmanship," or "construction." *Id.* at 26. It also does not cover loss "when there are two or more causes of loss to the covered property, and the predominant cause of loss is excluded" by other provisions of the policy. *Id.* at 27.

A hail storm hit the property in May of 2015. *Motion* [#39] at 4; *Response* [#45] at 3. Plaintiffs initially made a claim under their insurance policy for damage to the roof, then subsequently added a claim for damage to their EIFS stucco system.[4] *Ex. B* [#39-2] at 1-2 ¶¶ 5, 8. Before filing suit, Plaintiffs hired an engineering firm, SBSA, to inspect their EIFS stucco system. *Ex. E* [#39-5] at 39-40, 94. The parties agree that the EIFS stucco system was installed when the house was originally built in 1994. *Ex. B-18* [#39-2] at 83; *Exh. B-9* [#39-2] at 42. SBSA concluded that water intrusion and damage was the result of an inherent flaw in the EIFS stucco system when it was installed in the Plaintiffs' residence. *Ex. B-18* [#39-2] at 83. Defendant also hired an engineering firm, Rimkus Consulting, to inspect the property. *Ex. B* [#39-2] at 4 ¶ 18. Rimkus Consulting determined that the damage to the EIFS system and stucco in Plaintiffs' home had occurred over the years and that the cause of that damage was due to the defective nature of the EIFS system. *Ex. B-9* [#39-2] at 43-45. Based on this conclusion, Defendant denied Plaintiffs' claim for damages to their EIFS system and stucco because the loss was not sudden and accidental and was the result of improper design and/or construction. *Ex. B* [#29-2] at 5 ¶¶ 21-22.

Plaintiffs filed this lawsuit on December 16, 2016. *See Compl.* [#6] at 1. They have

---

[4] EIFS means "exterior insulation finishing system." *Response* [#45] at 3. "The system is essentially a thin layer of stucco finish on approximately three to four inches of insulated material, under which is a vapor barrier. This was a common exterior cladding system at the time the home was built, 1994 . . . ." *Id.*; *Reply* [#51] at 5.

asserted four claims: (1) entry of a declaratory judgment "fixing and determining the rights and obligations of the Parties under the policy and interpreting and resolving the issues under the policy;" (2) breach of contract; (3) common law insurance bad faith; and (4) violation of Colo. Rev. Stat. §§ 10–3–1115 and 1116. *Id.* ¶¶ 14-34. In the present Motion [#39], Defendant asserts that there is an absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law on all claims.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden

shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III. Analysis

In their Response [#45], Plaintiffs assert four arguments in support of their

contention that summary judgment is not appropriate in this case. The Court need only address two here.

**A.	Policy Language**

Plaintiffs assert that because the applicable insurance policy expressly covers "sudden and accidental direct physical loss to property" without defining "sudden and accidental," those terms should be construed against the insurance company. *Response* [#45] at 10. Plaintiffs further assert that "sudden and accidental" means "unexpected and unintended." Because the damage to their home was "unexpected and unintended," they argue, the loss should be covered. *Id.* at 11.

Plaintiffs rely on *Hecla Mining Company v. New Hampshire Insurance Company*, 811 P.2d 1083 (Colo. 1991), for their contention that "sudden and accidental" means "unexpected and unintended." Their reliance is misplaced. *Response* [#45] at 10. In *Hecla*, the Colorado Supreme Court interpreted the meaning of the phrase "sudden and accidental" as used in a commercial liability insurance policy's pollution exclusion clause. 811 P.2d at 1088-92. In order to avoid inconsistency between the policy's definition of "occurrence" and the use of the phrase "sudden and accidental" in the pollution exclusion, the Court construed the phrase to mean "unexpected and unintended" with regard to the nature of the pollution discharge. The Court's analysis was occasioned by its conclusion that the term "sudden" was used ambiguously in the context of the policy's exclusionary clause. 811 P.2d at 1090. But Plaintiffs have pointed to no inherent inconsistency in the policy language at issue here. As explained below, the Court concludes that the term "sudden" is not ambiguous as used in the policy, nor is it inherently ambiguous.

Preliminarily, *Hecla* does not stand for the proposition that the use of the phrase "sudden and accidental direct physical loss to property" in a homeowners' insurance policy means unexpected and unintended loss to the home. Rather, *Hecla* holds that a pollution exclusion clause in a commercial liability insurance policy which provides coverage for a "sudden and accidental" event is inconsistent with that policy's definition of an "occurrence" as an accident including "continuous or repeated exposure to conditions." In light of this inconsistency, the Court held that use of "sudden" in the policy exclusion was ambiguous. For that reason, the Court rejected the "temporal connotation" of "sudden," and instead construed the term to mean "unintended and unexpected." 811 P.2d at 1092. The holding in *Hecla* is simply not applicable to the policy or circumstances at issue here.

Moreover, in the absence of any internal inconsistency which creates ambiguity, the word "sudden" in the Plaintiffs' policy must be construed in accordance with its ordinary meaning. S*ee Allstate Ins. Co. v. Hulzar*, 52 P.3d 816, 821 (Colo. 2002) ("[I]nsurance policies are contracts, which must be construed according to their plain meaning . . . ."). Under Colorado law, in construing an insurance policy, terms are given their plain meaning according to common usage. *Pompa v. Am. Fam. Mut. Ins. Co.*, 520 F.3d 1139, 1143 (10th Cir. 2008). Plaintiffs' interpretation of "sudden and accidental" makes no reference to two of the most common usages of "sudden," which relate solely to timing: that is, events which are "marked by or manifesting abruptness or haste" or "made or brought about in a short time." *Sudden*, Merriam-Webster.com (2018), https://www.merriam-webster.com/dictionary/sudden (last visited Sept. 12, 2018). Under Plaintiffs' reading of the policy language, any unexpected and unintended property loss would be covered, regardless of how long it took to develop. Simply stated, in the context

of this policy, there is no legitimate reason to construe "sudden" as "gradual or continuous," which is precisely the type of damage found by the engineers to Plaintiffs' EIFS stucco system. Indeed, the Colorado Supreme Court's recognition in *Hecla* of the inherent contradiction and ambiguity in an insurance policy which covers accidents caused by "continuous or repeated exposure to conditions," but excludes damage caused by discharges of pollution unless they are "sudden and accidental," supports this conclusion. 811 P.2d at 1092.

Accordingly, the Court finds that the policy language indicating that the insurance covers "sudden and direct physical loss to property" means loss which was brought about in a short time, not loss which occurred over time. *See Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 323 (Colo. App. 1995) (stating that under Colorado law, "[t]he interpretation of an insurance policy, like any written contract, presents a question of law and, therefore, is appropriate for summary judgment").

**B.    Damage to the EIFS System**

Plaintiffs contend that "there is a factual dispute as to whether the damage to the EIFS system was caused by a design or construction issue." *Response* [#45] at 14. Be that as it may, the Court finds that there is no genuine issue of material fact regarding whether the damage to the EIFS system was "sudden and accidental," as required by the plain language of the policy. The engineers hired by both parties opined that the EIFS system was damaged as the result of long term water intrusion over a period of years. *Motion* [#39] at 12 (citing *Ex. B-9* [#39-2] at 6); *Response* [#45] at 14 (citing *Ex. 9* [#45-9] at 1). Regardless of whether the damage occurred because of a design flaw in the EIFS system or a construction issue, there is no dispute that the home was built in 1994, water

seeped into the EIFS system over a period of years, and the damage to the stucco at the residence was due to this long term water infiltration. *Ex. B-18* [#39-2] at 83; *Ex. B-9* [#39-2] at 43-45. Simply stated, such loss is not "sudden," and therefore the policy does not cover it.[5] Because there is no genuine issue of material fact regarding this issue, Defendant is entitled to judgment as a matter of law.

**C.     Bad Faith Claims**

Finally, the Court notes that the Tenth Circuit Court of Appeals has explicitly held that under circumstances similar to those in this case, where coverage was properly denied and the only claimed damages flow from that coverage denial, Plaintiffs' bad faith claims must also fail as a matter of law. *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192-93 (10th Cir. 2009) ("Having concluded that the insurance companies' denial of coverage was proper as a matter of law, we must also affirm the district court's grant of summary judgment in their favor on [the plaintiff's] bad faith claim. It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage.") (citing *Tynan's Nissan, Inc.*, 917 P.2d at 326; *M.L. Foss, Inc. v. Liberty Mut. Ins. Co.*, 885 P.2d 284, 286 (Colo. App. 1994), *overruled on other grounds by Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo. 2003); *Jarnagin v. Banker's Life and Cas. Co.*, 824

---

[5] The Court notes that Defendant further argues that the policy expressly excludes coverage for "faulty, inadequate or defective . . . design . . . [and] construction." *Motion* [#39] at 3 (citing *Ex. A* [#39-1] at 26). Hence, Plaintiffs' contention that a genuine issue of material fact regarding whether the damage to the EIFS stucco system was a caused by a design defect or a construction problem precludes entry of summary judgment appears to lack merit in light of the explicit policy exclusions. Nevertheless, because the loss does not fall within the coverage grant, the Court need not consider the applicability of the policy exclusions. *See, e.g., Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1289 (10th Cir. 2011) (stating that there must be an initial grant of coverage before an exclusion might apply).

P.2d 11, 15 (Colo. App. 1991)).

Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiffs' bad faith claims.

### IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#39] is **GRANTED**. The Clerk of Court shall close this case after entering judgment in favor of Defendant and against Plaintiffs on all claims.

Dated: September 13, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge